UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

SAMUEL ALEX GANN,          )
                          )
          Petitioner,      )
                          )
v.                         )     Nos.:  3:22-CV-343-TAV-JEM
                          )            3:19-CR-165-TAV-JEM-1
UNITED STATES OF AMERICA,  )
                          )
          Respondent.      )

## MEMORANDUM OPINION

Petitioner Samuel Alex Gann has filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Doc. 1; Case No. 3:19-cr-165, Doc. 22].[1] The government responded in opposition [Doc. 7] and petitioner replied [Doc. 13]. Also before the Court is petitioner's motion to appoint counsel for purposes of this § 2255 motion [Doc. 2], and petitioner's motion to continue [Doc. 8] and motion to hold case in abeyance [Doc. 11]. For the reasons set forth below, petitioner's motion for appointment of counsel [Doc. 2] is **GRANTED**. Further, because, based on the record, it plainly appears that petitioner is not entitled to relief, it is not necessary to hold an evidentiary hearing,[2] and petitioner's § 2255 motion [Doc. 1; Case No. 3:19-cr-165,

---

[1] All docket citations refer to the civil case unless otherwise indicated.

[2] An evidentiary hearing is required on a § 2255 motion unless the motion, files, and record conclusively show that the prisoner is not entitled to relief. *See* 28 U.S.C. § 2255(b). It is the prisoner's ultimate burden, however, to sustain his claims by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Accordingly, where "the record conclusively shows that the petitioner is entitled to no relief," a hearing is not required. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted).

Doc. 22] will be **DENIED**. Petitioner's motions to continue and to hold this case in abeyance [Docs. 8, 11] are **DENIED as moot**.[3]

I.     **Background**

In July 2018, petitioner was indicted on one charge of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), relating to an incident on or about November 2, 2017 [Case No. 3:18-cr-88, Doc. 3]. In September 2019, petitioner was charged in an information with a single count of being a felon in possession of a firearm, again, relating to an incident on or about November 2, 2017, in violation of 18 U.S.C. § 922(g)(1) [Case No. 3:19-cr-165, Doc. 1]. In the factual basis, filed one day after the information, the government set forth the applicable penalties for a violation of § 922(g)(1), but also noted that enhanced penalties could apply if petitioner was deemed an armed career criminal, within the meaning of 18 U.S.C. § 924(e) [Case No. 3:19-cr-165, Doc. 2; Case No. 3:18-cr-88, Doc. 16]. Petitioner pled guilty to the information in Case Number 3:19-cr-165 [Case No. 3:19-cr-165, Doc. 9; Case No. 3:18-cr-88, Doc. 20].

---

[3] Specifically, the motion to continue seeks a continuation of all deadlines until the Supreme Court's decision issued in *Erlinger v. United States*, No. 23-370 [Doc. 8], and the motion to hold case in abeyance sought additional time to file a reply brief in light of counsel's medical circumstances [Sealed Doc. 11]. As the Supreme Court has now issued its opinion in *Erlinger*, *see Erlinger v. United States*, 602 U.S. 821 (2024), and petitioner, through counsel, has filed a reply brief [Doc. 13], which the Court considers herein, these motions [Docs. 8, 11] are **DENIED as moot**.

The initial presentence investigation report ("PSR") did not deem petitioner an armed career criminal and calculated his guideline range as 30 to 37 months' imprisonment [PSR ¶ 51]. The government objected to the lack of an enhancement under the Armed Career Criminal Act ("ACCA") [Case No. 3:18-cr-88, Doc. 25]. Specifically, the government stated that petitioner had three prior Tennessee convictions for aggravated burglary and one prior Tennessee conviction for burglary of a building, all committed on different occasions [*Id.*].

In an initial addendum to the PSR, the probation officer stated that the government's objections were based on their belief that the Sixth Circuit precedent in *United States v. Stitt*, 860 F.3d 845 (6th Cir. 2017) may be overturned, and therefore, no changes would be made to the PSR [Criminal Case 3:18-cr-88, Sealed Doc. 27]. Subsequently, the Supreme Court issued its opinion in *United States v. Stitt*, 586 U.S. 27 (2018), and the probation officer concluded that petitioner did meet the ACCA criteria [Criminal Case 3:18-cr-88, Sealed Doc. 29].[4] The revised presentence investigation report ("RPSR") classified petitioner as an armed career criminal and calculated his guideline range as 180 months to 210 months, with a statutory mandatory minimum sentence of 15 years [RPSR ¶¶ 52–53]. Specifically, the RPSR found that

---

[4] In the second addendum to the PSR, the probation officer cites "*United States v. Stitt* (6th Cir. 2018)" as the basis for the alteration to the PSR [Case No. 3:18-cr-88, Sealed Doc. 29]. However, it appears to the Court that this refers to the Supreme Court's December 10, 2018, decision in *United States v. Stitt*, 586 U.S. 27 (2018), as that is the relevant decision that occurred between the first addendum to the PSR and the second addendum to the PSR.

the following prior convictions qualified as ACCA predicate offenses: (1) three 2012 convictions for aggravated burglary in Blount County Circuit Court; and (2) a 2017 conviction for burglary of a building in Blount County Circuit Court [*Id.* ¶¶ 28–31]. Each of the three aggravated burglary convictions had a conviction date of January 6, 2012 [*Id.* ¶¶ 28–30]. However, the RPSR provided the following details as to each offense:

> Records indicate that on October 26, 2011, officers conducted an investigation at 1917 East Old Topside Road regarding a home burglary. During the burglary, several items of jewelry were taken from the home. A bill of sale indicated the defendant sold some of the items at a business in Knoxville, Tennessee

[*Id.* ¶ 28];

> Records indicate that on or about October 26, 2011, officers responded to 1824 East Old Topside Road in reference to a Burglary. Upon arrival, contact was made with the victim who resides at 4633 Fox Hills Drive. The victim reported she arrived home to find her house had been broken into, and there were several items taken. She indicated the defendant had stolen from her in the past, so she called the defendant's father. The defendant's father let the victim come to his residence to see if any of her stolen items were at his residence. Several of the victim's stolen items were located in the defendant's bedroom

[*Id.* ¶ 29]; and

> Records indicate that on or about October 19, 2011, the defendant pawned an X-Box 360 that had been taken in a home burglary at 4028 Fox Hills Drive

[*Id.* ¶ 30].

4

Petitioner objected to the addition of the ACCA enhancement [Case No. 3:18-cr-88, Sealed Doc. 32]. In relevant part, petitioner argued that (1) his three convictions for aggravated burglary did not require proof of intent to commit a crime upon entry, and therefore, are not generic burglaries within the ACCA's enumerated offenses clause [*Id*. at 12–19]; and (2) the *Shepard*[5] evidence did not establish that his three aggravated burglary convictions were committed on different occasions [*Id*. at 19–24]. The government responded in opposition [Case No. 3:18-cr-88, Doc. 33], and petitioner replied [Case No. 3:18-cr-88, Doc. 36].

District Judge R. Leon Jordan ultimately overruled petitioner's objections to the ACCA enhancement [Case No. 3:18-cr-88, Doc. 38]. As to petitioner's objection regarding the specific intent to commit a crime upon entry, Judge Jordan noted that the Supreme Court had recently issued its decision in *Quarles v. United States*, 587 U.S. 645 (2019), in which it held that "generic remaining-in burglary occurs under [§] 924(e) when the defendant forms the intent to commit a crime at any time while unlawfully remaining in a building or structure" [*Id*. at 3]. Judge Jordan concluded that *Quarles* defeated petitioner's objection in this regard [*Id*.]. Further, Judge Jordan found that petitioner's shifting argument that the burglary statute at issue was not "generic burglary" because the crimes cannot be committed recklessly was barred by circuit precedent [*Id*. at 3–4].

---

[5] *Shepard v. United States*, 544 U.S. 13 (2005).

Turning to petitioner's occasions-different objection, Judge Jordan noted that the RPSR indicated that the three aggravated burglaries occurred on or about October 26, October 26, and October 19, 2011, respectively, and three distinct addresses [*Id.* at 5]. However, Judge Jordan noted that the PSR was not an approved *Shepard* document [*Id.*]. Judge Jordan, therefore, looked first to the state court charging documents, and noted that those documents alleged defendant violated the Tennessee aggravated burglary statute on or about October 24, October 19, and October 26, 2011, respectively [*Id.* at 6]. Each document alleged that the crime occurred at "the habitation of" distinct named victims [*Id.*]. Next, Judge Jordan looked to the state court judgments for each offense [*Id.*]. Each judgment listed the name of the victim in the case, which matched the distinct victims listed on the charging documents, and provided a unique address for each victim [*Id.*]. The judgments also specified an offense date for each crime, which matched the charging documents, and are different from one another (e.g., October 24, October 19, and October 26, 2011) [*Id.*]. Finally, Judge Jordan looked at the state plea colloquy, and noted that petitioner had agreed that he entered the homes of three different individuals [*Id.* at 6–7]. In light of these *Shepard* documents, Judge Jordan concluded that, given the offenses were committed on different dates, at different residences, the government had shown by a preponderance of the evidence that petitioner's three aggravated burglaries were committed on different occasions [*Id.* at 7–8].

6

Petitioner filed a motion for reconsideration as to this second objection only, arguing that his three convictions for aggravated burglary did not require proof of intent to commit a crime at all, during any point during the offense conduct, and therefore did not qualify as generic burglaries for ACCA purposes [Case No. 3:18-cr-88, Doc. 41]. Specifically, petitioner sought to distinguish his case from *Quarles* by noting that, unlike the defendant in that case, he had raised the argument that the Tennessee statute had no requirement of any intent to commit a crime at any time [*Id*. at 1]. The government responded that petitioner's motion actually raised a new argument, but such argument was also precluded by controlling precedent and was meritless [Case No. 3:18-cr-88, Doc. 43, p. 1].

Judge Jordan denied the motion for reconsideration, reiterating that the arguments presented related to the validity of prior published decisions, and therefore, were more appropriately addressed with the Sixth Circuit, sitting *en banc*, or the Supreme Court [Case No. 3:18-cr-88, Doc. 44].

Ultimately, Judge Jordan sentenced petitioner to 180 months' imprisonment as to Count 1 of the information in Case Number 3:19-cr-165, and dismissed Count 1 of the indictment in Case Number 3:18-cr-88 upon the government's motion [Case No. 3:18-cr-88, Doc. 48; Case No. 3:19-cr-165, Doc. 10].

Petitioner appealed [Case No. 3:19-cr-165, Doc. 14]. On appeal, he argued that: (1) Tennessee aggravated burglary under subsection (a)(3) did not qualify as a generic

burglary because it contained no specific intent requirement; and (2) the district court erred in finding that his three aggravated burglary convictions occurred on different occasions [*See* Sixth Cir. ECF, Case No. 19-6287, Doc. 18 (Appellant Brief); Doc. 25 (Reply Brief)].

The Sixth Circuit affirmed [Case No. 3:19-cr-165, Doc. 17]. Addressing petitioner's argument that his aggravated burglaries under subsection (a)(3) were not "generic burglaries," the Sixth Circuit stated that it had "repeatedly affirmed that *Brumbach* [*v. United States*, 929 F.3d 791 (6th Cir. 2019)] closed the book on Tennessee aggravated burglary by holding, in a published opinion, that [*United States v.*] *Nance*, [481 F.3d 882 (6th Cir. 2007)] once again controls" [*Id.* at 5 (internal quotation marks omitted)]. The Sixth Circuit also noted that several panels had addressed and rejected petitioner's argument that the (a)(3) variant of Tennessee aggravated burglary does not qualify as a generic burglary because it lacks an intent-to-commit-a-crime element [*Id.* at 6]. The Sixth Circuit followed those prior panels, in light of *Brumbach* [*Id.*]. As to petitioner's arguments about the different occasions analysis, the Sixth Circuit noted that petitioner had conceded that the question was answered in *United States v. Hennessee*, 932 F.3d 437 (6th Cir. 2019), and not in his favor [*Id.*]. The Sixth Circuit agreed that petitioner's argument was foreclosed by *Hennessee* [*Id.*].

8

Petitioner filed a petition for a writ of certiorari before the Supreme Court [Case No. 3:19-cr-165, Doc. 19], which the Supreme Court denied [Case No. 3:19-cr-165, Doc. 20]. Subsequently, petitioner, through counsel, filed the instant § 2255 motion [Case No. 3:19-cr-165, Doc. 22; Case No. 3:22-cv-343, Doc. 1].

## II. Legal Standard

The Court must vacate, set aside, or correct a prisoner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . ." 28 U.S.C. § 2255. To obtain relief under § 2255 because of a constitutional error, the error must be one of "constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). A § 2255 petitioner has the burden of proving that he is entitled to relief by a preponderance of the evidence, *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006), and must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

## III. Analysis

### A. Appointment of Counsel

The Court first addresses petitioner's request for appointment of counsel for purposes of this § 2255 motion [Doc. 2]. In that motion, which was filed by attorney Laura Davis, attorney Davis states that she has filed dozens of § 2255 petitions and has previously litigated the issues raised by petitioner's § 2255 motion in other cases [*Id.* at 1]. Attorney Davis states that petitioner has been consulted about the "change in counsel" and asks that the Court appoint Attorney Davis for his § 2255 motion [*Id.* at 2]. Attorney Davis filed petitioner's 41-page § 2255 motion contemporaneously with this motion to appoint counsel [Doc. 1].

A petitioner does not have a constitutional right to counsel in mounting a collateral attack on his sentence. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Instead, the Criminal Justice Act provides that the Court may appoint counsel to represent a petitioner in a § 2255 proceeding if the Court determines that the interests of justice so require. 18 U.S.C. § 3006A; *see also* 28 U.S.C. § 2255(g) (permitting the court to consider the appointment of counsel in "proceedings brought under this section").

In deciding whether to appoint counsel in a civil case, the Court considers whether exceptional circumstances exist by examining the following factors: (1) "the type of case," (2) the litigant's "abilit[y] to represent himself," and (3) the "complexity

of the factual and legal issues involved." *Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993) (internal quotations omitted). Typically, this Court does not appoint counsel in a collateral attack upon a conviction or sentence unless it has determined that a hearing on the § 2255 motion is necessary. *Vinson v. United States*, 235 F.2d 120, 122 (6th Cir. 1956); *United States v. Wooden*, No. 1:03-cr-66, 2008 WL 5110790, at *2 (E.D. Tenn. Nov. 26, 2008) (holding that the court "cannot appoint counsel at government expense to provide legal advice and represent [a criminal defendant] prior to the filing of a § 2255 motion").

Here, the Court is faced with the somewhat unique situation where counsel, apparently presuming that the motion for appointment would be granted, simultaneously filed a motion for the Court to appoint her as petitioner's § 2255 counsel along with the 41-page counseled § 2255 motion [*See* Docs. 1, 2]. Counsel then continued, filing additional briefing, under the assumption that the motion to appoint counsel would be granted. That is not the appropriate course. Rather, if counsel seeks appointment in a § 2255 proceeding, counsel should first ensure that the Court has granted the motion for appointment of counsel before proceeding as if such relief has been granted.

But, under the circumstances, given that counsel has already fully litigated this § 2255 motion, and given the complexity of the issues raised, the Court will **GRANT** the motion to appoint counsel [Doc. 2].

11

### B. Tennessee Aggravated Burglary Variant

In his motion, petitioner once again asserts that Tennessee aggravated burglary under subsection (a)(3), which he refers to as the "trespass-plus-crime" variant, is not a generic burglary, and therefore, does not qualify as an ACCA predicate offense [Doc. 1, pp. 8–16]. Petitioner acknowledges that the Sixth Circuit has rejected this argument, or at least declined to engage with it on the merits, relying on prior precedent [*Id.* at 16]. However, citing to Justice Sonya Sotomayor's statement regarding the denial of certiorari in this case, and Judge Bernice Donald's dissent in *United States v. Betts*, No. 22-5006, 2022 WL 3137710 (6th Cir. Aug. 5, 2022) petitioner argues that the Sixth Circuit has not actually decided this question [*Id.* at 6–7, 16].

The government responds that the Sixth Circuit squarely rejected this argument on appeal [Doc. 7, p. 4].

"A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances." *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (internal quotation marks omitted); *see also Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999) ("Absent exceptional circumstances, or an intervening change in the case law, [petitioner] may not use his § 2255 petition to relitigate" an issue raised on direct appeal). "Such a highly exceptional circumstance is an intervening change in the law." *United States v. Weir*, Nos. 2:12-cr-13, 2:16-cv-38, 2016 WL 8730588, at *3 (E.D. Ky. June 24, 2016).

12

Petitioner raised his argument regarding the (a)(3) variant of Tennessee aggravated burglary and whether it was a generic burglary in light of the lack of a specific intent element on direct appeal [Sixth Circuit ECF, Case No. 19-6287, Doc. 18]. And the Sixth Circuit specifically addressed this argument, citing prior precedent to reject petitioner's argument [Case No. 3:19-cr-165, Doc. 17, pp. 5–6]. Indeed, much of petitioner's § 2255 motion addressing this issue appears to be a slightly modified version of his appellant and reply briefs before the Sixth Circuit [*Compare* Doc. 1, pp. 8–16 *with* Sixth Circuit ECF, Case No. 19-6287, Doc. 18, pp. 36–38, 41; *and* Doc. 25, pp. 18–19, 21–22, 29].

Petitioner does not point to any intervening change in law but does point to two sources in support of his position that the Sixth Circuit has not actually addressed this issue on the merits [Doc. 1, pp. 6–7, 16]. First, he points to Justice Sotomayor's statement regarding the Supreme Court's denial of certiorari in his case. In a statement respecting the denial of certiorari in this case, Justice Sotomayor opined that "Gann's argument has not been addressed by the Sixth Circuit, which leaves this Court without a reasoned decision to review. . . . To that end, I would expect the Sixth Circuit to give the argument full and fair consideration in a future case." *Gann v. United States*, 142 S. Ct. 1, 2 (2021) (mem.) (Sotomayor, J., concurring in denial of certiorari).

Petitioner also points to Judge Donald's dissent in *Betts*. In that dissenting opinion, Judge Donald stated:

13

Since *Brumbach*, panel after panel has mistakenly treated this issue as foreclosed without providing a reasoned basis for doing so. *See e.g., United States v. Brown*, 957 F.3d 679 (6th Cir. 2020) (deferring to *Brumbach* and *Ferguson* instead of analyzing Brown's argument that subsection (a)(3) does not qualify as an ACCA predicate); *United States v. Buie*, 960 F.3d 767 (6th Cir. 2020) (citing *Brumbach* as foreclosure precedent for consideration). Justice Sotomayor highlighted this mistake in a recent statement respecting the denial of certiorari. *See Gann v. United States*, 142 S. Ct. 1 (2021) (Sotomayor, J., concurring in denial of certiorari). She found that *Brumbach* "had rejected different arguments for why different elements of Tennessee's aggravated burglary did not match the elements of generic burglary" and noted that "the Sixth Circuit neither discussed nor decided, whether Tennessee aggravated burglary also comports with the requirement that generic burglary include the intent to commit a crime." *Id.* at *2. Justice Sotomayor "expect[ed] the Sixth Circuit to give the argument full and fair consideration in a future case." *Id.* Unfortunately, the majority fails to do so here in its conclusory, two-paragraph opinion.

It is crucially important that we distinguish dicta from binding precedent, and more importantly, that each issue before the court "is investigated with care, and considered in its full extent." *Cohens v. State of Virginia*, 19 U.S. 264, 399 (1821). To foreclose an issue simply because prior panels have done the same continues to entrench a troublesome precedent.

*Betts*, 2022 WL 3137710, at *2 (Donald, J., dissenting).

But, of course, neither Justice Sotomayor nor Judge Donald's opinions could be deemed an "intervening change in the law." *See Weir*, 2016 WL 8730588, at *3. And, notably, on direct appeal, petitioner directly raise the argument that the Sixth Circuit "has not consciously (or categorically) decided every legitimate question about the elements of Tennessee burglary." Sixth Cir. ECF, Case No. 19-6287, Doc. 25, pp. 8–15. Indeed, petitioner specifically argued that *Nance* was not determinative of this issue. *Id.* at 10–12. Thus, the Sixth Circuit was presented with the same arguments on direct

appeal that petitioner now raises, that is, the argument that whether Tennessee aggravated burglary under subsection (a)(3) is a generic burglary in light of the lack of a specific intent element has not been addressed previously by the Sixth Circuit. Despite being presented with that precise argument on direct appeal, the Sixth Circuit concluded that *Brumbach* and *Nance* controlled on the issue, and also pointed to other panel decisions addressing the specific intent argument [Case No. 3:19-cr-165, Doc. 17, pp. 4–5]. In other words, the Sixth Circuit has already addressed this issue on direct appeal and petitioner, therefore, cannot relitigate the matter in this § 2255 motion. *See Dupont*, 76 F.3d at 110; *Wright*, 182 F.3d at 467. Nothing in Justice Sotomayor's statement concurring in the denial of certiorari or Judge Donald's dissent in *Betts* alter this analysis. Accordingly, petitioner's claim that his Tennessee aggravated burglary convictions were not ACCA predicates under the enumerated offenses clause is **DENIED**.

### C. Occasions Different

#### 1. *Wooden*'s Impact on Sixth Circuit Precedent

Next, petitioner argues that, in light of the Supreme Court's decision in *Wooden v. United States*, 595 U.S. 360 (2022), the district court erred as a factual matter in finding that his three burglary offenses were on "occasions different from one another," such that they qualified as three separate ACCA predicate convictions [Doc. 1, p. 16]. Petitioner summarizes *Wooden* as holding that offenses committed close in time, in an

15

uninterrupted course of conduct, will often count as part of one occasion [*Id.* at 17]. Petitioner contends that *Wooden* thus abrogated the Sixth Circuit's precedent in *Hennessee* [*Id.* at 16–17, 21].[6]

But, even if *Hennessee* remains good law, petitioner argues that the district court erred in finding he committed at least three aggravated burglaries on different occasions [*Id.* at 21, 25]. Petitioner argues that, under *Wooden*, the *Shepard* evidence does not necessarily prove that he committed the aggravated burglaries on different occasions [*Id.* at 21]. Rather, the state court records show that the three burglary offenses occurred during a short period toward the end of October 2011, all in the same city, and do not prove by a preponderance of the evidence that the burglaries were committed on different days, much less different occasions [*Id.* at 22]. Petitioner argues that, while the "on or about" dates on the three state charging instruments are different, the state has no burden to prove an offense happened on the exact date alleged in the indictment [*Id.* at 23]. Petitioner contends that it appears from his RPSR that the three burglaries were not separated by a significant intervening event or substantial gap in time [*Id.* at 24]. Additionally, information from both the RPSR and the state court judgements suggests that the burglaries occurred near each other, possibly on the same street [*Id.*].

---

[6] Petitioner states that, at the time of his motion, a petition for rehearing *en banc* was pending in *United States v. Williams*, 39 F.4th 342, to address whether *Hennessee* remains good law in this Circuit [Case No. 3:22-cv-343, Doc. 1, p. 21]. But the *Williams* opinion ultimately did not address the ongoing validity of *Hennessee*. *See* 39 F.4th 342.

16

Petitioner contends that because the ACCA sentence was imposed above the otherwise applicable statutory maximum sentence, a complete miscarriage of justice resulted [*Id.* at 25]. Additionally, he states that he is actually innocent of violating the ACCA, because he does not have the required predicate convictions [*Id.*]. Finally, petitioner asserts that both his trial and appellate counsel were ineffective in failing to challenge the Sixth Circuit's "erroneous simultaneity test" [*Id.* at 26].

The government responds that *Wooden* explained that offenses committed a day or more apart, or at least a significant distance apart, should nearly always be treated as separate occasions [Doc. 7, p. 5]. The records from petitioner's prior aggravated burglaries show that they were committed a day or more apart, that is, on October 19, 2011, October 24, 2011, and October 26, 2011, respectively [*Id.*]. And, post-*Wooden*, the Sixth Circuit has consistently treated offenses committed a day or more apart as separate ACCA predicates [*Id.* at 7].

In *Wooden*, the Supreme Court addressed whether a defendant's 10 burglary convictions, which were the result of his burglarizing 10 units in a single storage facility in the course of one evening, occurred on "occasions different" for purposes of the ACCA. 595 U.S. at 362–63. The Court concluded that those burglaries arose from a single criminal episode, and therefore, counted only once under the ACCA. *Id.* at 363. Previously, the Sixth Circuit had concluded that these burglaries counted as 10 separate occasions because it was possible to determine when the first offense was completed

and the point at which the second offense began. *Id.* at 365 (citing *United States v. Wooden*, 945 F.3d 498, 505 (2019)). The Supreme Court noted that the Sixth Circuit had applied its rule that offenses occurred on different occasions anytime they took place sequentially, rather than simultaneously. *Id.* The Supreme Court disagreed with this approach, concluding that multiple crimes may occur on one occasion, even if not at the exact same moment. *Id.* at 366. The Court stated that the inquiry is multi-factored in nature. *Id.* at 369. The Court explained:

> Timing of course matters, though not in the split-second, elements-based way the Government proposes. Offenses committed close in time, in an uninterrupted course of conduct, will often count as part of one occasion; not so offenses separated by substantial gaps in time or significant intervening events. Proximity of location is also important; the further away crimes take place, the less likely they are components of the same criminal events. And the character and relationship of the offenses may make a difference. The more similar or intertwined the conduct giving rise to the offenses—the more, for example, they share a common scheme or purpose—the more apt they are to compose one occasion.

*Id.* The Court noted that often a single factor, especially time or place, can "decisively differentiate occasions." *Id.* at 369–70. "Courts, for instance, have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart, or at a 'significant distance.'" *Id.* at 370.

Ultimately, even after the Supreme Court's clarification of the applicable standard for determining whether prior convictions occurred on "occasions different" for ACCA purposes, the Court concludes that the government established by a preponderance of the evidence that petitioner's three Tennessee aggravated burglary

18

convictions occurred on occasions different. As Judge Jordan aptly explained, the *Shepard* documents in this case indicate that petitioner's three aggravated burglary convictions, while relatively close in time, occurred on different days and at different locations [*See* Case No. 3:18-cr-88, Doc. 38, pp. 5–7].

First, the state court charging instruments indicate that petitioner was charged with (1) "on or about the 24th day of October, 2021" burglarizing the "habitation of Joann Burnett"; (2) "on or about the 19th day of October, 2011" burglarizing the "habitation of Susan Johnson"; and (3) "on or about the 26th day of October, 2011" burglarizing the "habitation of Missy Gieger" [Case No. 3:18-cr-88, Doc. 32-1, pp. 1, 3, 5]. The respective state court judgments likewise reflect offense dates of October, 24, 2011, October 19, 2011, and October 26, 2011 [*Id.* at 2, 4, 6]. Those judgments also provide for restitution to each victim, listed, respectively, as Joann Burnett, with an address of 4133 Foxhills Drive, Susan Johnson, with an address of 4028 Foxhills Drive, and Missy Gieger,[7] with an address of 1917 East Old Topside Road [*Id.*]. Additionally, the transcript of petitioner's state court plea colloquy, in which he pleaded guilty to each of the three aggravated burglary offenses, reflects that the prosecutor provided a factual basis stating that, for each of these charges respectively, petitioner entered the homes of Joann Burnett, Susan Johnson, and Missy Geiger, and petitioner

---

[7] The state court judgment reflects the name "Missy Giger," which appears to refer to the same individual as the charging instrument, which reflects the name "Missy Geiger" [*See* Case No. 3:18-cr-88, Doc. 32-1, pp. 5–6].

agreed that the state could prove those facts at trial [Case No. 3:18-cr-88, Doc. 32-2, pp. 21–22]. Thus, the *Shepard* documents indicate, by a preponderance of the evidence, that petitioner committed the aggravated burglaries on different dates in October 2011, at the homes of three different individuals.

Admittedly, petitioner's three aggravated burglaries occurred within a fairly short period of time, all within approximately a two-week period towards the end of October 2011. And the *Shepard* documents indicate that at least two of the residences may have been close in location, as both were located on Foxhills Drive. But this case is nonetheless distinguishable from the facts at issue in *Wooden*, where the defendant burglarized 10 separate storage units, all contained within the same storage facility, in one ongoing occasion. *See Wooden*, 595 U.S. at 362–63.

Looking to the factors specifically set out in *Wooden*, the timing of the instant facts support a conclusion that the offenses occurred on "occasions different." 18 U.S.C. § 924(e). This is not a circumstance where the offenses were committed "close in time, i*n an uninterrupted course of conduct*." *Wooden*, 595 U.S. at 369 (emphasis added). Rather, the *Shepard* documents indicate that multi-day long gaps occurred between each of petitioner's aggravated burglary offenses [*See* Case No. 3:18-cr-88, Doc. 32-1].[8] And, notably, the Supreme Court acknowledged that courts have "nearly

---

[8] Petitioner argues that, because the state court charging documents only allege that the offenses occurred "on or about" certain dates, they do not definitively prove that the offenses occurred on those dates [Doc. 1, p. 23]. But the district court reviewed whether the government had proven that the offenses were committed on different occasions by a preponderance of the

20

always treated offenses as occurring on separate occasions if a person committed them a day or more apart." *Wooden*, 595 U.S. at 370. Turning to proximity, while the *Shepard* documents indicate that two of the offenses may have occurred on the same street, they nonetheless indicate that the offenses occurred at different residences, and residences with house numbers that indicate they were not directly next door to one another.[9] Such is a far cry from the storage units all located within the same storage facility at issue in *Wooden*. *See id.* at 362–63. Finally, as to the "character and relationship of the offenses," while each offense appears to involve the same modus operandi, they do not appear to be part of the same "scheme or purpose," beyond the purpose of obtaining ill-gotten gains. *See id*. at 369. Accordingly, after a review of these factors, the Court concludes that, even applying *Wooden*'s analysis, petitioner's three aggravated burglary convictions remain offenses that occurred on "occasions" different for ACCA purposes. *See* 18 U.S.C. § 924(e).

To the extent that petitioner now asserts that both his trial counsel and appellate counsel were ineffective in failing to challenge the Sixth Circuit's then-applicable test for determining "occasions different," a petitioner alleging ineffective assistance of

evidence [*See* Case No. 3:18-cr-88, Doc. 38 (citing *United States v. Pham*, 872 F.3d 799, 801 (6th Cir. 2017))]. Under that standard, viewing all of the *Shepard* documents together, the Court agrees that it is more likely than not that petitioner's three aggravated burglary offenses occurred on separate dates in October 2011.

[9] Notably, because petitioner has four qualifying ACCA predicates [RPSR ¶¶ 28–31], even if the Court were to conclude that these two aggravated burglaries were part of the same occasion, petitioner would still qualify as an armed career criminal. 18 U.S.C. § 924(e).

counsel must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, he must identify specific acts or omissions to prove that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *Strickland*, 466 U.S. at 687, as measured by "prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Second, a petitioner must also establish "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. Petitioner cannot meet either prong of *Strickland*. First, petitioner cannot show that his counsel performed deficiently in failing to raise the argument that the Sixth Circuit's precedent was incorrect, as "[t]he failure to anticipate a change int eh law will not generally constitute ineffective assistance of counsel." *Mullican v. United States*, 469 F. Supp. 2d 498, 504 (E.D. Tenn. 2007) (quoting *Brunson v. Higgins*, 708 F.2d 1353, 1356 (8th Cir. 1983)). Moreover, for the reasons discussed *supra*, the Court concludes that petitioner cannot show prejudice as, even if the standard announced in *Wooden* had been applied at the time of petitioner's sentencing, there is no reasonable probability of a different outcome.

For all of these reasons, petitioner's claim on this ground is **DENIED**.

### 2. Judicial Factfinding of Non-Elemental Facts

Finally, petitioner argues that the imposition of an ACCA sentence based on judicial factfinding of non-elemental facts violated the Fifth and Sixth Amendments

22

[Doc. 1, p. 26]. Petitioner argues that the Sixth Circuit's current approach to the occasions-different inquiry permits district courts to violate the Sixth Amendment, specifically, the Sixth Circuit's *Hennessee* decision conflicts with *Mathis*[10] and the Fifth and Sixth Amendments [*Id.* at 27–29]. Further, petitioner contends that existing Supreme Court precedent makes clear that non-elemental circumstances surrounding the commission of an offense must be pled in the indictment and found by a jury [*Id.* at 30 (citing *United States v. Hayes*, 555 U.S. 415 (2009) and *Nijhawan v. Holder*, 557 U.S. 29 (2009))]. Petitioner states that the existing constitutional requirement and the ongoing error of the Sixth Circuit's approach has been illuminated and confirmed by *Wooden* [*Id.* at 32].[11]

The government responds that, while *Wooden* suggests that the ACCA's different occasions element must be submitted to a jury, petitioner is not eligible for relief on this ground [Doc. 7, p. 8]. Specifically, the government argues that, under Sixth Circuit precedent, the different occasions issue need not be pled in an indictment, submitted to a jury, and proved beyond a reasonable doubt [*Id.* (citing *United States v.*

---

[10] *Mathis v. United States*, 579 U.S. 500 (2016).

[11] Petitioner noted that, at the time of his motion, the Sixth Circuit was "poised" to address this issue in *Williams*, 39 F.4th 342 [*Id.* at 32–33]. Ultimately, in *Williams*, the Sixth Circuit concluded that it had already determined that a sentencing judge could determine whether prior offenses were committed on occasions different from one another. 39 F.4th at 351 (citing *United States v. King*, 853 F.3d 267, 274 (6th Cir. 2017)). However, this decision was later abrogated by the Supreme Court's decision in *Erlinger. See United States v. Campbell*, 122 F.4th 624, 629 (6th Cir. 2024).

23

*Burgin*, 388 F.3d 177, 188 (6th Cir. 2004))].  While the Supreme Court was, at the time of the government's brief, considering that issue, any holding in the pending case would not be applicable on collateral review, as the Supreme Court has consistently treated rules regarding matters that must be submitted to a jury under the Sixth Amendment as procedural rules that do not apply retroactively on collateral review [*Id.* at 8–9].

Petitioner replies that the Supreme Court decided in *Erlinger v. United States*, 602 U.S. 821 (2024) that the occasions different question must be resolved by a jury [Doc. 13, p. 2].  Because the government did not allege the ACCA offense in the information and petitioner did not admit the prior offenses in his guilty plea, his Fifth and Sixth Amendment rights were violated by application of the ACCA enhancement [*Id.* at 3].  Petitioner contends that it appears that such error is structural, but regardless, the constitutional errors in his case plainly prejudiced him, as his sentence exceeds the statutory maximum for the offense to which he pled guilty [*Id.* at 4, 10–11].  Petitioner also argues that *Erlinger* applies retroactively on collateral review [*Id.* at 14].  Petitioner argues that *Erlinger* relied on the prior rules of *Apprendi*,[12] *Alleyne*,[13] *Descamps*,[14] and *Mathis*, and, because these rules were in existence when his appeal became final, they apply on collateral review [*Id.* at 16–17].

---

[12] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

[13] *Alleyne v. United States*, 570 U.S. 99 (2013).

[14] *Descamps v. United States*, 570 U.S. 254 (2013).

24

In *Erlinger*, which was decided while this § 2255 motion was pending, the Supreme Court held that a defendant is entitled to have a jury resolve the ACCA's different-occasions inquiry unanimously and beyond a reasonable doubt. 602 U.S. at 835. This decision abrogated prior Sixth Circuit case law, which held that district court judges could determine whether prior offenses were committed on different occasions for purposes of the ACCA. *United States v. Durham*, 151 F.4th 821, 824 (6th Cir. 2025).

Following the then-applicable circuit precedent, here, the district court made the relevant determination that petitioner's aggravated burglary convictions occurred on different occasions for ACCA purposes [*See* Case No. 3:18-cr-88, Doc. 38]. Under *Erlinger*, this determination should have been made by a jury, or, as the case may be here, admitted in petitioner's plea agreement. But the question is whether petitioner may raise this new rule of law as a ground for relief under § 2255.

"A new rule is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive." *In re Mazzio*, 756 F.3d 487, 489 (6th Cir. 2014) (internal alterations and quotation marks omitted) (quoting *Tyler v. Cain*, 533 U.S. 656, 633 (2001)). In *Teague v. Lane*, the Supreme Court set out two types of rules that are "automatically" retroactive on collateral review: (1) "substantive rules that place 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe'"; and (2) "new procedural rules that 'are

25

implicit in the concept of ordered liberty.'" *Id.* (quoting *Teague v. Lane*, 489 U.S. 288, 311 (1989)). While new substantive rules typically apply retroactively on collateral review, new procedural rules typically do not. *Id.* But *Teague* provided one exception: "courts give retroactive effect to only watershed rules of criminal procedure which alter our understanding of the bedrock procedural elements that must be found to vitiate the fairness of a particular conviction." *Id.* at 491 (internal quotation marks and emphasis omitted) (quoting *Teague*, 489 U.S. at 311).

But, more recently, the Supreme Court has recognized that "in the 32 years since *Teague* . . . this Court has announced many important new rules of criminal procedure. But the Court has not applied *any* of those new rules retroactively on federal collateral review." *Edwards v. Vannoy*, 593 U.S. 255, 258 (2021) (emphasis in original). The Supreme Court ultimately concluded, in light of this, that "no new rules of criminal procedure can satisfy the watershed exception." *Id.* at 271. The Court stated:

> Continuing to articulate a theoretical exception that never actually applies in practice offers false hope to defendants, distorts the law, misleads judges, and wastes the resources of defense counsel, prosecutors, and courts. . . . It is time—probably long past time—to make explicit what has become increasingly apparent to bench and bar over the last 32 years: New procedural rules do not apply retroactively on federal collateral review. The watershed exception is moribund. It must be regarded as retaining no vitality.

*Id.* at 272 (internal quotation marks omitted). Accordingly, post-*Edwards*, new procedural rules apply to cases pending in trial courts and on direct appeal, but do not

26

apply retroactively on federal collateral review. *Wall v. Kiser*, 21 F.4th 266, 270 (4th Cir. 2021).

Courts within this circuit have unanimously concluded that the new rule announced in *Erlinger* is not retroactively applicable on collateral review. *Jackson v. United States*, No. 1:25-cv-1021, 2025 WL 2771525, at \*4 (W.D. Mich. Sept. 26, 2025) ("*Erlinger* did not announce a new rule that is retroactively applicable on collateral review. Instead, the rule announced in *Erlinger* merely allocated decision making authority by requiring a jury rather than a judge to make certain factual determinations" (internal citations, quotation marks, and alterations omitted)); *Kaiser v. United States*, No. 25-1133, 2025 WL 2306733, at \*2 (6th Cir. June 27, 2025) (declining to address retroactivity, and finding that any *Erlinger* error was harmless); *Johnson v. United States*, No. 1:24-cv-831, 2025 WL 731966, at \*10 ("*Erlinger* announced a new procedural rule that does not retroactively apply"); *Ursery v. United States*, No. 3:22-cv-776, 2024 WL 4652209, at \*5 (M.D. Tenn. Nov. 1, 2024) ("the rule announced in *Erlinger* is not retroactive on collateral review"); *Goff v. United States*, No. 3:22-cv-215, 2024 WL 4701882, at \*7 (M.D. Tenn. Nov. 6, 2024) ("*Erlinger* is not retroactive on collateral review"); *United States v. Abney*, Nos. 5:18-133-DCR, 5:24-76-DCR, 2024 WL 5055827, at \*3 (E.D. Ky. Dec. 10, 2024) ("the holding in *Erlinger* is procedural and does not apply retroactively"); *Allen v. United States*, No. 2:23-cv-114,

27

2025 WL 2223001, at *6 n.8 (E.D. Tenn. Aug. 5, 2025) ("*Erlinger* is not retroactive on collateral review").

Further, it appears that courts across the country agree. *See United States v. Charles*, --- F. Supp. 3d ---, 2025 WL 3687935, at * (D. Mass. 2025) ("Because Erlinger announced a new procedural rule, it does not apply retroactively on collateral review); *Grant v. United States*, No. 8:24-cv-2029, 2024 WL 4729193, at *4 (M.D. Fla. Nov. 8, 2024) ("the procedural rule announced in *Erlinger* is not retroactive on collateral review"); *United States v. Hansford*, No. 3:20cr57, 2025 WL 90240, at *3 (N.D. Ind. Jan. 14, 2025) ("The procedural *Erlinger* rule extending the jury right in the limited ACCA context isn't retroactive"); *Cuyler v. United States*, No. CR 120-036, 2025 WL 1136295, at *4 (S.D. Ga. Mar. 21, 2025) ("Erlinger announced a new procedural rule that is not retroactive to cases on collateral review"); *Adams v. United States*, Nos. 2:16-cr-63, 2:25-cv-122, 2026 WL 765306, at *1 (D. Me. Mar. 18, 2026) ("the rule announced by the Supreme Court in *Erlinger* is not retroactive for purposes of habeas corpus"); *Griego v. United States*, No. 1:23-cv-190, 2025 WL 1697296, at *10 (D.N.M. June 17, 2025) ("*Erlinger* does not apply retroactively on collateral review"); *United States v. Watkins*, Nos. 1:21-cr-10, 1:24-cv-218, 2025 WL 786579, at *3 (D.N.D. Mar. 12, 2025) (concurring with "[t]he cases which have addressed the issue [that] have agreed that *Erlinger* does not apply retroactively"); *United States v. Knutson*, No. 17-157, 2025 WL 1125474, at *2 (D. Minn. Apr. 16, 2025) ("the rule announced in

28

*Erlinger* . . . does not apply retroactively on federal collateral review" (internal quotation marks omitted)); *Forrest v. McGuinness*, No. 21-cv-5853, 2025 WL 1677350, at *2 (E.D.N.Y. June 13, 2025) (*Erlinger* does not "create[] a new right or appl[y] retroactively"); *United States v. Hicks*, Nos. 15-CR-33, 23-CV-166, 2025 WL 3640883, at *11 (W.D.N.Y. Dec. 16, 2025) ("*Erlinger* . . . is merely a procedural rule that does not apply retroactively"); *Jacobs v. United States*, No. 3:24-cv-2743, 2025 WL 875489, at *3 (N.D. Tex. Mar. 19, 2025) ("Movant has cited no case—and the court has found none—holding that any right first recognized in *Erlinger* is retroactively applicable on collateral review."). In fact, in its research, the Court has not uncovered a single case holding that *Erlinger* applies retroactively on collateral review.

The Court agrees that "the rule announced in *Erlinger* does not amount to a new substantive rule, as the *Erlinger* decision did not 'set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose." *Jackson*, 2025 WL 2771525, at *4 (quoting *Montgomery v. Louisiana*, 577 U.S. 190, 201(2016)). Because *Erlinger* announced a new procedural rule, as opposed to a new substantive rule, the Court concludes that *Erlinger* does not apply retroactively on collateral review. *See Edwards*, 593 U.S. at 271. Accordingly, petitioner's *Erlinger* claim is **DENIED**.

## IV.  Conclusion

For the reasons stated above, petitioner's motion for appointment of counsel [Doc. 2] is **GRANTED**.   Petitioner's motions to continue [Doc. 8] and to hold case in abeyance [Sealed Doc. 11] are **DENIED as moot**.  The Court finds that petitioner is not entitled to relief pursuant to 28 U.S.C. § 2255, and his motion to vacate, set aside or correct sentence [Doc. 1; Case No. 3:19-cr-165, Doc. 22] will be **DENIED** and this civil action will be **DISMISSED**.  A hearing is unnecessary in this case.

The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous.   Therefore, this Court will **DENY** petitioner leave to proceed *in forma pauperis* on appeal.   *See* Fed. R. App. P. 24. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE.**  28 U.S.C. § 2253; Fed. R. App. P.  22(b).  A separate judgment will enter.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

30